# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

CARMEN VELAZQUEZ,

    Plaintiff,

vs.                                      CASE NO.:

ENVOY AIR, INC.,

    Defendant.

_____/

## COMPLAINT AND JURY DEMAND

Plaintiff, CARMEN VELAZQUEZ, (hereinafter "Plaintiff" or "Ms. Velazquez") by and through the undersigned counsel, sues Defendant, ENVOY AIR, INC., (hereinafter "Defendant" or "Envoy") and alleges in support:

## JURISDICTION AND VENUE

1. This is a civil action by Plaintiff against her former employer for monetary damages, declaratory relief, and other equitable relief pursuant to the Age Discrimination in Employment Act (ADEA) and Title VII of the Civil Rights Act of 1964 for discrimination based on age and national origin.

1

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 as the matters at issue involve federal questions and the enforcement of federal statutes. Declaratory relief is authorized under 28 U.S.C. §§ 2210 and 2202.

3. This Court has personal jurisdiction over Defendant, ENVOY AIR, INC., because defendant's ties to the Middle District are so continuous and systematic as to act as a proxy for presence.

4. Venue is proper in the Middle District of Florida, Orlando Division, under 28 USC § 1391 because Plaintiff is in Orange County, Florida.

## PARTIES

5. Plaintiff, CARMEN VELAZQUEZ, is a resident of Orange County, Florida.

6. Plaintiff, CARMEN VELAZQUEZ, is a 55-year-old Hispanic female.

7. Defendant, ENVOY AIR, INC., is a Delaware for Profit Corporation with its headquarters located at 4301 Regent Blvd, MD 243, Irving, Texas 75063.

8. Defendant, PRAXAIR DISTRIBUTION, INC., is an American regional airline headquartered in Irving, Texas, in the Dallas-Fort Worth

metroplex. It is a wholly owned subsidiary of American Airlines Group that, along with several carriers outside the group, feeds the American Airlines route network under the American Eagle brand.

9. Defendant, ENVOY AIR, INC., is a covered employer under the Age Discrimination in Employment Act (ADEA) and Title VII of the Civil Rights Act of 1964.

## **ADMINISTRATIVE PREREQUISITES**

10. Plaintiff, CARMEN VELAZQUEZ, has satisfied all the procedural and administrative requirements set forth in the Age Discrimination in Employment Act (ADEA) and Title VII of the Civil Rights Act of 1964.

## **ALLEGATIONS CENTRAL TO ALL COUNTS**

11. Ms. Velazquez, a 55-year-old Hispanic flight attendant, was fired because of her national origin and age. Despite being a 10-year employee, she was investigated and then fired with the stated reason of violating Envoy's social media policy.

12. Envoy's justification relies on a TikTok comment Ms. Velazquez anonymously posted where she characterizes Envoy as one of the "good

ones." But Envoy has selectively enforced its policy based on age and national origin.

13. As the company was aware at the time of Ms. Velazquez's termination, several white flight attendants at Envoy and its affiliates who are below the age of 40 have made TikTok posts showing them in uniform, complaining about passengers, and talking about their airplane's bathrooms being covered in urine.

14. Despite making posts that both directly connect them with and comment negatively about Envoy or its affiliates—posts that were shared with tens of thousands of followers—none of these comparators have been fired. What set Ms. Velazquez apart and led to her termination were her age and national origin.

15. Carmen Velazquez began working for Envoy in or around May 2011 as a flight attendant.

16. Ms. Velazquez is a frequent user of social media to connect with family and friends. However, she has always taken care to follow Envoy's social media policy to the letter.

17. Ms. Velazquez, like millions of others, adopted TikTok as a social media platform in which to connect with others.

18. However, as a veteran employee who is dedicated to Envoy, Ms. Velazquez made sure that her TikTok was entirely devoid of anything that could link her to Envoy or any of its affiliates. In fact, Ms. Velazquez only included her name, a profile picture of a movie character, had only two followers to her profile, and had her profile set to private.

19. Ms. Velazquez also maintains a fully private Facebook page where, despite identifying herself as an Envoy employee, she has consistently made it clear that her opinions are not that of Envoy or its affiliates. Further, Ms. Velazquez's Facebook profile is not the only Facebook profile with the name "Carmen Velazquez," so there is no way to link her Facebook profile and TikTok.

20. Ms. Velazquez's Facebook profile and TikTok profile are not linked in any way.

21. Envoy's social media policy states in relevant part that the social media policy activates when an employee "refer[s] to, implicate[s] or reflect[s] on the Company or any other AAG company…."

22. On Ms. Velazquez's TikTok profile, there is no reference, implication or reflection on Envoy or its affiliates. Therefore, Envoy's social media policy was not implicated regarding Ms. Velazquez's TikTok.

5

23. On or about July 28, 2020, while on a voluntary furlough, Ms. Velazquez used her entirely private TikTok account to reply to a comment on another user's page. Ms. Velazquez simply stated that "PSA Envoy Piedmont Endeavor are the good ones…" and made a comment comparing those airlines positively to others. In her comment, Ms. Velazquez did not identify herself as an Envoy employee.

24. On August 7, 2020, Ms. Velazquez was scheduled to go back to work because her voluntary furlough was ending.

25. When Ms. Velazquez returned to work on the seventh, she was immediately called into a meeting with Flight Services Manager, Kevin Moshinski (white male), and Total Reward Specialist, Bradey Paschal (young, white male).

26. Mr. Paschal began the meeting in a congenial tone asking Ms. Velazquez about her social media use. Mr. Paschal then became condescending and accusatory. He asked Ms. Velazquez whether "she liked to use social media" and if she liked to follow flight attendants on social media. Mr. Paschal then transitioned into telling Ms. Velazquez the social media policy for the company and telling her that she was being investigated because of an alleged violation of its social media policy.

27. Mr. Paschal alerted Ms. Velazquez to a private message Ms. Velazquez sent to another flight attendant, which advised that person to remove any references to American Airlines from her profile. Ms. Velazquez's suggestion was to aid a colleague's adherence to Envoy's social media policy. This suggestion is also not a violation of Envoy's social media policy because a suggestion to remove identifying information does not activate the social media policy, considering it was not public and simply gave a good faith suggestion.

28. During the meeting, Mr. Paschal also pulled up Ms. Velazquez's Facebook profile and interrogated her about it. From her Facebook profile, Mr. Paschal tried to make an attenuated connection to Ms. Velazquez's TikTok by trying to claim that Ms. Velazquez's Facebook profile could lead to her TikTok. The connection was attenuated because, when searched for, Ms. Velazquez's name is common on Facebook and her TikTok does not identify her. Of course, Ms. Velazquez's Facebook profile makes no mention of Envoy and nothing about Ms. Velazquez's comment on TikTok links her to Envoy. Therefore, despite the representative's attempts at making the connection, he failed.

29. After Mr. Paschal's failed attempts at finding a reason to find Ms. Velazquez at fault, he informed her that Envoy would be investigating.

30. On August 11, 2020, without any word on the outcome of the alleged investigation, Ms. Velazquez received an unexpected phone call from Brady Araujo, a white manager, and Robert Barrow, Envoy AFA MEC President, terminating her employment because of an alleged social media violation.

31. During the call, Ms. Velazquez expressed her frustration with Envoy's uneven enforcement of its social media policy and put Envoy on notice that she was being discriminated against based on her age and national origin.

32. Later that same day, Ms. Velazquez messaged Mr. Barrow several TikTok pages of other flight attendants who openly referred to Envoy and its affiliates by posting their employee status, implicating Envoy, and its affiliates by wearing their flight attendant's uniform, and even negatively reflecting upon Envoy and its affiliates by posting TikTok videos criticizing customers.

33. The first video Ms. Velazquez sent Mr. Barrow shows a white, young woman in her flight attendant's uniform with an exasperated

expression regarding Envoy's passengers that was posted by user @xoblondevoyage, who maintains a following of over 53K on TikTok, and captions her video "When a passenger tells me that the flight attendant on the last flight."

34. The second video Ms. Velazquez used as an example of Envoy's unequal enforcement of their policy was posted by @kellyyy_anne, a user with over 50K followers, who also has a picture of herself in uniform on her public TikTok profile.

35. The third TikTok post Ms. Velazquez sent to Mr. Barrow features another young, white woman in her flight attendant's uniform filmed on an AAG airplane. @NoelleCors, featured in the third TikTok post, has over 43K followers on her public TikTok profile and has "Flight Attendant" listed on her profile.

36. Each TikTok post Ms. Velazquez sent to Mr. Barrow had over 10K views and one of them had almost 630K views.

37. These TikTok users who blatantly violated Envoy's social media policy have three things in common: they are white, younger than 40, and have not been fired for their social media posts.

38. Mr. Barrow even commented on how "bold" the posts were, but replied to Ms. Velazquez's stating, "no one has turned them in yet."

39. However, Mr. Paschal's comments to Ms. Velazquez on or about August 4, 2020, show that Envoy was aware of these posts at the time it fired her.

40. Despite this awareness, Envoy only terminated Ms. Velazquez, a flight attendant who is over 40 years old and Hispanic, for violation of this policy.

41. Envoy claims that her termination was for a violation of policy after she was on a "last chance." However, this "last chance" status originates from an alleged incident in June of 2019; Ms. Velazquez's termination was over a year later.

42. Additionally, unequal application of a policy with regards to age and national origin show pretext – to date Envoy has not terminated or even disciplined any of the young, white flight attendants for social media posts. For example, @NoelleCors, one of Ms. Velazquez's comparators, posted a public TikTok with the statement "When passengers complain about stepping in pee after I told them use the bathroom with shoes ON" placed over the flight attendant in full uniform sitting on an American Airlines

10

plane. The TikTok is captioned, "Airplane bathrooms are gross, please wear shoes xoxo your fav flight attendant."

43. This unequal treatment is discrimination by Envoy, and its claim that Ms. Velazquez allegedly violated the social media policy is merely pretext to hide Envoy's discriminatory animus.

44. Throughout her employment, Ms. Velazquez always gave her best efforts to the company.

45. Moreover, Ms. Velazquez had every intention of continuing to work for Envoy until retirement.

46. Unfortunately, Envoy terminated Ms. Velazquez due to her age and national origin.

47. Ms. Velazquez complained to Envoy that she was being treated differently based on her national origin and age. Still, Envoy did not investigate Ms. Velazquez's report of discrimination or reverse the termination. Rather, Envoy upheld Ms. Ms. Velazquez's termination in violation of the Age Discrimination in Employment Act and Title VII of the Civil Rights Act of 1964.

48. As a result of Defendant's discrimination, Plaintiff has suffered lost wages and benefits, emotional distress, humiliation, mental anxiety, loss of the enjoyment of life and loss of dignity.

49. Ms. Velazquez has incurred attorney fees and costs related to pursuing her claims against Defendant.

## COUNT I
## DISCRIMINATION IN VIOLATION
## OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

50. Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

51. Plaintiff is an employee within the meaning of the ADEA and belongs to the class of employees protected under the statute, namely, employees over the age of 40.

52. Defendant is an employer within the meaning of the ADEA, is engaged in an industry affecting commerce, and has 20 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

53. Defendant intentionally discriminated against Plaintiff in violation of the ADEA by terminating Ms. Velazquez because of her age.

54. The employment practices complained of above were intentional.

55. All prerequisites to the bringing of the suit have been satisfied or fulfilled.

56. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and expects to suffer pecuniary losses, including but not limited to, lost wages and other benefits associated with his employment.

57. As a result of Defendant's unlawful discrimination, Plaintiff has harms and damages including but not limited to emotional pain, suffering, inconvenience, personal humiliation, mental anguish, loss of enjoyment of life, and other non-pecuniary damages.

58. Defendant acted at all relevant times with malice and/or reckless indifference to Plaintiff's federally protected rights. Plaintiff therefore seeks punitive damages.

59. Additionally, Plaintiff seeks all equitable relief necessary to return her to the position that she would have been in but for Defendant's unlawful discrimination.

60. Defendant's actions referenced above have caused Plaintiff to retain the services of the undersigned counsel to pursue her federal rights in

this action. Consequently, Plaintiff seeks attorneys' fees, expert costs, and other costs of suit.

**WHEREFORE**, Plaintiff, CARMEN VELAZQUEZ, demands entry of a Final Judgment against Defendant, ENVOY AIR, INC., for the following:

A.   An award of Back Pay damages including but not limited to, lost wages and other employment benefits;

B.   Reinstatement to the position Ms. Velazquez held, equivalent position of employment, or the position of employment she would have enjoyed but for the discrimination;

C.   If reinstatement is not feasible, front pay with respect to all pay and benefits Ms. Velazquez would have received but for the discrimination;

D.   Compensatory Damages for mental anguish, loss of enjoyment of life, and humiliation;

E.   Judgment against Defendant for liquidated damages under the ADEA;

F.   Prejudgment interest;

G.   Punitive Damages;

H.   Reasonable attorney's fees and costs; and

I. All such other relief as the Court deems just, equitable and appropriate.

## COUNT II
## DISCRIMINATION IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

61. Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

62. As described above, Defendant's actions constitute unlawful discrimination based on Plaintiff's national origin, Hispanic, in violation of Title VII of the Civil Rights Act of 1964.

63. The employment practices complained of above were intentional.

64. All prerequisites to the bringing of the suit have been satisfied or fulfilled.

65. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and expects to suffer pecuniary losses, including but not limited to, lost wages and other benefits associated with his employment.

66. As a result of Defendant's unlawful discrimination, Plaintiff has harms and damages including but not limited to emotional pain, suffering,

inconvenience, personal humiliation, mental anguish, loss of enjoyment of life, and other non-pecuniary damages.

67. Defendant acted at all relevant times with malice and/or reckless indifference to Plaintiff's federally protected rights. Plaintiff therefore seeks punitive damages.

68. Additionally, Plaintiff seeks all equitable relief necessary to return her to the position that she would have been in but for Defendant's unlawful discrimination.

69. Defendant's actions referenced above have caused Plaintiff to retain the services of the undersigned counsel to pursue her federal rights in this action. Consequently, Plaintiff seeks attorneys' fees, expert costs, and other costs of suit.

**WHEREFORE**, Plaintiff, CARMEN VELAZQUEZ, demands entry of a Final Judgment against Defendant, ENVOY AIR, INC., for the following:

A. An award of Back Pay damages including but not limited to, lost wages and other employment benefits;

B. Reinstatement to the position Ms. Velazquez held, equivalent position of employment, or the position of employment she would have enjoyed but for the discrimination;

C. If reinstatement is not feasible, front pay with respect to all pay and benefits Ms. Velazquez would have received but for the discrimination;

D. Compensatory Damages for mental anguish, loss of enjoyment of life, and humiliation;

E. Prejudgment interest;

F. Punitive Damages;

G. Reasonable attorney's fees and costs; and

H. All such other relief as the Court deems just, equitable and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues so triable.

Dated this 25th day of August 2021.

    Respectfully submitted by:

    */s/ Jason W. Imler, Esq*
    Jason W. Imler
    Florida Bar No. 1004422
    **Imler Law**
    19409 Shumard Oak Dr., Unit 103
    Land O' Lakes, Florida 34639
    Telephone (813) 553-7709
    Jason@Imlerlaw.com